# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
## 3:12-cv-708-GCM

| | |
|---|---|
| FELICIA MARCHMON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| SECURITAS SECURITY SERVICES, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## I. INTRODUCTION

**THIS MATTER** comes before the Court on Defendant's Motion for Summary Judgment (Doc. No. 32), Defendant's Memorandum in Support (Doc. No. 33), Plaintiff's Response in Opposition (Doc. No. 35), and Defendant's Reply (Doc. No. 36). For the reasons set forth below, Defendant's Motion is **GRANTED**.

## II. BACKGROUND

Defendant Securitas Security Services provides uniformed security guards and patrol services for businesses under contract. One such business is Carrier Corporation, which contracts with Securitas for security services at its plant on Old Statesville Road in Charlotte, North Carolina. Plaintiff Felecia Marchmon was Securitas' site supervisor at this location from December 2003 until November 11, 2011. As site supervisor, Marchmon had overall responsibility for Securitas' services at the Carrier plant. She also supervised five uniformed security officers. Her duties and responsibilities included monitoring persons and vehicles entering and exiting the Carrier plant, issuing identification badges to employees, and patrolling

the plant. Marchmon's immediate supervisor at Securitas was Branch Manager Fred Berman. Securitas' liaison at Carrier was Safety Manager Mike Lutz.

Berman counseled Marchmon on her job performance several times throughout the course of her employment with Securitas. Berman believed that Marchmon generally had a problem accepting responsibility for security at the Carrier site, and that she often placed the blame for security shortcomings on the security personnel under her direction. (*See* Berman Decl. ¶ 4). One notable incident occurred on August 4, 2011, when an unauthorized former employee entered the plant. Marchmon and another Securitas employee failed to apprehend the man, who had to be removed from the facility by a Carrier manager. (*See* Pl. Dep. at 79-80). After the incident, Marchmon placed some of the blame for the incident on the other Securitas employee, stating, in part, "I'm here to help, not to take all the responsibility." (*See* Pl. Dep. Ex. 10). Securitas also maintains that Marchmon repeatedly failed to follow procedures when finding replacement personnel to fill in when employees under her direction called off of work. (Berman Decl. ¶ 4).

Mike Lutz became unhappy with Marchmon's performance during 2011, and in August of that year, he asked Securitas to remove her as site supervisor. (Berman Decl. ¶ 5). Instead, Securitas counseled Marchmon on her performance once more in the hopes that she would improve. In late September 2011, Berman was replaced by Andrea Hoepner as branch manager. Hoepner met with Lutz, who remained dissatisfied with Marchmon's performance and reiterated his request that she be removed. (*See* Hoepner Decl. ¶ 3). On November 11, 2011, Hoepner met with Marchmon and informed her that she was being replaced and would no longer work at the Carrier site. Hoepner indicated that other positions within Securitas might be available, and that she should follow up with another branch manager. Marchmon did follow up with the other

manager, who informed her that he did not have another position open. On November 23, 2011, Securitas placed Marchmon on a "layoff" effective November 18, 2011. (Hoepner Decl. ¶ 8).

The parties do not disagree that these events took place; however, Marchmon contests that she is to blame for the performance incidents cited by Securitas, and Securitas' characterization of those incidents, and questions whether they were the primary motive for her termination. Notably, she points out two incidents in which Berman made racially charged comments. In 2008, when Marchmon informed Berman of her mother's passing, Berman allegedly made a comment about "why it took so long to bury black people." (Pl. Dep. at 102). In August 2011, Berman allegedly commented on what Marchmon was eating, saying: "That's why most black women are overweight because of what you're eating." (*Id.* at 103). These incidents, Marchmon argues, "provide[] evidence of Defendant's racial animus." (Pl. Response at 6).

On April 16, 2012, Marchmon filed a complaint with the Equal Employment Opportunity Commission. (Compl. Ex. 1). On July 26, 2012, the EEOC issued Marchmon a right to sue letter. (*Id.*) On October 26, 2012, Marchmon filed her Complaint against Securitas alleging a single claim for discriminatory discharge because of race in violation of Title VII of the Civil Rights Act of 1964 (Doc. No. 1). On December 20, 2012, Securitas filed an Answer denying the substantive allegations of the Complaint (Doc. No. 10). After a period of discovery, Securitas filed the instant Motion on July 25, 2013. Because the Plaintiff is proceeding *pro se*, on August 14, 2013, the Court provided her with a *Roseboro* notice and set a response deadline (Doc. No. 34). Plaintiff responded within the allotted time, and Defendant timely filed a Reply. This matter is now ripe for disposition.

## III. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 47 U.S. 242, 248 (1986). The mere existence of a scintilla of evidence in support of the nonmovant's position is not sufficient to establish a genuine dispute. *Id.* at 252. A material fact affects the outcome of the suit under the applicable substantive law. *See id.* at 248. When determining whether a dispute is genuine or a fact is material, courts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion. *Scott v. Harris*, 550 U.S. 372, 378 (2007). Unsupported speculation, however, is insufficient to defeat a motion for summary judgment. *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 960 (4th Cir. 1996).

## IV. DISCUSSION

Where a Title VII plaintiff offers no direct or circumstantial evidence of a discriminatory motive for her termination, the court is to employ the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). *See Warch v. Ohio Casualty Ins. Co.*, 435 F.3d 510, 513 (4th Cir. 2006); *see also Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 318 (4th Cir. 2005). Under this framework, the plaintiff bears the initial burden of establishing a *prima facie* case by demonstrating that (1) she was a member of a protected class; (2) she suffered an adverse employment action; (3) she was performing her job at a level that met Defendant's legitimate expectations; and (4) other employees who were not members of the protected group were retained under similar circumstances. *See Washington v. City of Charlotte*, 219 F. App'x 273, 276 (4th Cir. 2007).

Once these factors have been established, the burden shifts to the defendant to offer a legitimate, non-discriminatory reason for the alleged discriminatory action. *Warch*, 435 F.3d at 513-14. The burden then shifts back to the plaintiff, who must show that the non-discriminatory reason offered by the defendant is simply a pretext meant to conceal the real motivation of illegal, intentional discrimination. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000). Mere speculation of a discriminatory motive is insufficient to survive summary judgment. *See Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

### A. Prima Facie Case

As a preliminary matter, the Court notes that Marchmon has not offered any direct or circumstantial evidence of a discriminatory motive for her termination. She does cite two incidents in which a supervisor made racially charged comments about the burial practices and diets of African Americans. While insensitive, these comments were not made in connection with Marchmon's termination or in reference to her job performance. The situation presented here is analogous to *Volochayev v. Sebelius*, 513 F. App'x 348 (4th Cir. 2013), where an employer was alleged to have made "disparaging remarks about Russians, calling them rude, insubordinate, and overly fond of vodka." *Id.* at 351. The Fourth Circuit found that these comments did not constitute evidence of a discriminatory motive for termination because the comments did not appear to have any direct bearing on the employee's termination. *Id.* at 352. Similarly, without more of a connection between these alleged comments and Marchmon's termination, the Court cannot find that there is any direct or circumstantial evidence of a discriminatory motive for termination. Thus, the Court will proceed, as does Plaintiff's brief, directly to the *McDonnell Douglas* burden-shifting analysis.

### i. Legitimate Expectation of Performance

It is undisputed that Marchmon is a member of a protected class and that she suffered an adverse employment action. Securitas disputes, however, that Marchmon was performing her job at a level that met its legitimate expectations at the time of her termination. Specifically, it notes that it counseled Marchmon several times throughout her employment on her job performance, and has filed documents in support. Securitas maintains that Marchmon repeatedly failed to follow procedures for substituting absent employees, and that she generally had a problem accepting responsibility for security at the Carrier site. (*See* Berman Decl. ¶ 4). It notes one incident in particular, when it alleges that Marchmon failed to adequately address a security breach at the site and a former employee had to be removed by Carrier personnel. (*See* Pl. Dep. at 79-80). Perhaps most importantly, Securitas asserts that Carrier, its client, asked that Marchmon be removed. (Berman Decl. ¶ 5; Hoepner Decl. ¶ 3).[1]

In response, Marchmon argues that she was, in fact, meeting Securitas' legitimate expectations as site supervisor. In support, she notes that she held that position for "nearly 11 years,"[2] and that the sheer length of time that she remained in that position "indicate[s] her compliance with both the expectations of Carrier Corporation and the expectations of the Defendant[]." (Pl. Resp. at 7). She also submits two documents in support of this proposition. One is a newsletter announcing Carrier's attainment of a high-level certification from the

---

[1] In her response, Marchmon argues that any statements concerning what Carrier believed or thought about her job performance should be excluded as hearsay. (Pl. Resp. at 8). This argument, however, misunderstands hearsay. The statements in question, contained in affidavits from Berman and Hoepner, are not offered for the truth of the matter asserted; rather, they are offered "as an explanation of why [the employer] believed that terminating the plaintiff's employment . . . was necessary and appropriate." *Arrington v. E.R. Williams, Inc.*, 490 F. App'x 540, 543 (4th Cir. 2012). Thus, "evidentiary rules governing the consideration of hearsay are not implicated." *Id.*

[2] The Court notes that Marchmon appears to have held the position from December 2003 to November 2011, nearly eight years.

Department of Homeland Security after inspections of its plants in Charlotte, North Carolina and Monterrey, Mexico. (*See* Pl. Resp. Ex. H). The announcement has Marchmon pictured as part of the "certification and validation team," but does not appear to mention her directly. (*Id.*) The other is an email chain from March 2010 in which she is told "good job" by Fred Berman after she notified him that she had successfully transferred the site's security badges to a new system. (*See* Pl. Resp. Ex. I). Otherwise, Marchmon objects to Securitas' characterization of performance-related incidents, asserting that complaints about her performance were often arbitrary and that "Defendant fabricated incidents against her due to her race in an attempt to remove her from her position." (Pl. Resp. at 9). She further notes that, insofar as Securitas maintains that it removed her at the behest of Carrier, "Carrier was not the Plaintiff's employer." (Pl. Resp. at 5).

In its Reply, Securitas notes that "[i]t is a legitimate expectation of Defendant that each employee performs in a manner that satisfies the client." (Def. Reply at 2). The Court agrees. The nature of Securitas' business requires that it perform its contractual obligations such that its clients are fully satisfied with its services. Indeed, "Defendant's business would cease to exist if Defendant's primary goal was anything but client satisfaction." (*Id.*) It stands to reason, then, that an employee's failure to satisfy the client is itself a failure to meet the legitimate expectations of the employer. *See Arrington v. E.R. Williams, Inc.*, 490 F. App'x 540, 544 (4th Cir. 2012). Moreover, it appears that Securitas continued to counsel Marchmon on her performance even after Carrier requested that she be removed from the site. (*See* Berman Decl. ¶ 5). This, coupled with the performance incidents cited by Securitas, is sufficient to defeat Marchmon's assertion that she was performing her job at a level that met Securitas' legitimate expectations.

7

### ii. Comparator Evidence

Marchmon also fails to provide sufficient comparator evidence to satisfy the fourth prong of a *prima facie* case. The only support offered by Marchmon in this regard is that her two successors, both white males, were also removed from the Carrier site but were not subsequently terminated. (*See* Pl. Resp. at 5). Securitas acknowledges that Marchmon's successor was William Collopy, a white male, and that he was removed for performance-related issues. (Hoepner Decl. ¶ 7). The second man referenced by Marchmon is known only as "Kenny." Plaintiff offers no further information about the circumstances of these other employees or the precise reasons for their termination. Significantly, there is no evidence in the record that indicates the kinds of performance issues these individuals had, whether these issues were similar to Plaintiff's, or whether Carrier asked that these employees be removed. Without more evidence as to the circumstances of these individuals' removal, the Court cannot conclude that Plaintiff has demonstrated that they were retained under similar circumstances. *See Carter v. Ball*, 33 F.3d 450, 461 (4th Cir. 1994); *Cook v. CSX Transp. Corp.*, 988 F.2d 507, 511-12 (4th Cir. 1993). Because Marchmon has failed to establish the third and fourth prongs, she has failed to establish a *prima facie* case of employment discrimination.

### B. Pretext

Even if Marchmon had established a *prima facie* case of discrimination, she fails to demonstrate that Securitas' stated reasons for her termination are a pretext for intentional discrimination. Securitas' stated reasons for terminating Marchmon were their displeasure with her performance, as evidenced by several specific incidents and repeated attempts to counsel her, and Carrier's request that she be removed. (*See generally* Berman Decl.; Hoepner Decl.). Much of Marchmon's Response is spent contesting the underlying facts of the performance incidents

cited by Securitas, but she offers no facts to suggest that Fred Berman and Andrea Hoepner did not believe sincerely and in good faith that Marchmon was not performing her job satisfactorily, or that Carrier wanted Marchmon removed. The Fourth Circuit has noted that "when an employer gives a legitimate, non-discriminatory reason for discharging the plaintiff, 'it is not our province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for plaintiff's termination.'" *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 279 (4th Cir. 2000) (citing *DeJarnette v. Corning, Inc.*, 133 F.3d 293, 299 (4th Cir. 1998)). The Court is satisfied that Securitas has offered legitimate, non-discriminatory reasons for discharging Marchmon, that those reasons were Securitas' true motivation for terminating Marchmon, and that there is not a genuine dispute as to these facts.

Nor has Marchmon offered sufficient evidence to demonstrate racial animus on the part of Securitas. The sole basis for this contention is the two remarks made by Fred Berman about the burial practices and diets of African Americans, made three years and three months, respectively, before Marchmon's termination. Again, while insensitive, these statements were offhand comments not part of any discussion regarding Marchmon's job performance or her termination. Statements that are "unrelated to the decisionmaking process itself are not direct evidence of discrimination." *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998). The Court finds that these statements were unrelated to the decisionmaking process and are thus insufficient to demonstrate racial animus on the part of Securitas. As such, Marchmon has failed to demonstrate that Securitas' stated reasons for her termination are a pretext for intentional discrimination.

## V. CONCLUSION

Based on the foregoing reasons, **IT IS ORDERED** that Defendant's Motion for Summary Judgment (Doc. No. 32) is hereby **GRANTED**. The Clerk of Court is directed to close this civil case.

**SO ORDERED**.

Signed: January 10, 2014

Graham C. Mullen
United States District Judge